IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

DREAGLEN SYLVESTER DAVIS, #1271774 §

VS. § CIVIL ACTION NO. 6:08cv237

TEXAS BD. OF CRIMINAL JUSTICE, ET AL. §

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Dreaglen Sylvester Davis, a prisoner confined at the Coffield Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. Executive Director Brad Livingston is the sole defendant remaining in the lawsuit. The complaint was referred for findings of fact, conclusions of law and recommendations for the disposition of the lawsuit. The present Report and Recommendation concerns the Defendant's motion for summary judgment (docket entry numbers 61, 64 and 70) and the Plaintiff's response (docket entry numbers 65 and 73)

Facts of the Case

The complaint was filed on June 16, 2008. On July 2, 2008, a Report and Recommendation was issued to dismiss the complaint as frivolous. The Report and Recommendation focused on claims that the Defendants had imposed slavery on the Plaintiff and that he was forced to work without compensation. The Report and Recommendation was adopted, and the lawsuit was dismissed on July 30, 2008. On August 13, 2008, the Plaintiff filed a motion to alter or amend the judgment, which noted that all of his claims had not been considered. On September 9, 2008, relief was granted to the

1

extent that the Plaintiff was permitted to proceed with his strip search and wrongful confiscation of property claims.

On October 27, 2008, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The Plaintiff testified under oath that strip searches are conducted in the open while inmates are returning to their housing areas from the chow hall. The strip searches are conducted in the presence of female officers and other female employees, as well as other inmates. There is no privacy. The inmates are selected at random. He has been forced to strip naked for such searches. He testified that he has been forced to strip search in front of sexual predators. For example, one homosexual inmate subsequently made sexual advances towards him and told him that he liked what he saw when the Plaintiff was naked. The Plaintiff testified that he has been groped following strip searches. He testified that he has been humiliated by the strip searches and wants the policies changed.

The Plaintiff next complained that his personal property has been confiscated without compensation. He specifically testified that his fan and two or three headphones were taken by prison personnel. The items were confiscated with the excuse that they had been altered. The response to his grievance specified that security personnel had the right to confiscate altered property. He was told he would have to buy the items again. The Plaintiff noted that a handle on his fan had broken. It was confiscated at the beginning of summer. He was not able to buy another fan until August. He added that he had to suffer in the heat without a fan all summer.

Following the *Spears* hearing, Defendant Brad Livingston was ordered to respond to the Plaintiff's strip search and wrongful confiscation of property claims.

## Defendant's Motion for Summary Judgment

On January 23, 2009, the Defendant filed a motion for summary judgment (docket entry #61). He filed additional documents in support of the motion on January 29, 2009 (docket entry #64). He argued that he did not have the requisite personal involvement in these matters to maintain a § 1983 action against him. He further argued that the Plaintiff's claims for monetary damages against him in his official capacity are barred by the Eleventh Amendment. He next argued that the TDCJ's strip search policy is reasonably related to legitimate penological interests. He finally argued that he is entitled to qualified immunity as a matter of law. In support of the motion, he submitted Administrative Directive 03.22 (hereinafter "AD-03.22").

On March 5, 2009, the Defendant filed a supplemental motion for summary judgment (docket entry #70). The supplemental motion was filed in response to a court order to address the application in the present case of the Fifth Circuit's decision in *Hutchins v. McDaniels*, 512 F.3d 193 (5th Cir. 2007), regarding strip searches. The supplemental motion also addressed the application in the present case of the Fifth Circuit's decision in *Allen v. Thomas*, 383 F.3d 147, 149 (5th Cir. 2004), regarding the Plaintiff's property claim. The Defendant filed an affidavit by Coffield Unit Assistant Warden Kevin Wheat in support of the motion.

The Defendant's arguments will be fully discussed in the Discussion and Analysis section of this Report and Recommendation.

## Plaintiff's Response

The Plaintiff filed a response (docket entry #65) to the motion for summary judgment on February 3, 2009. He filed a response (docket entry #73) to the supplemental motion for summary judgment on March 23, 2009. He attached a toothbrush to the response. His responses will be fully

3

discussed in conjunction with the Defendants' argument in the Discussion and Analysis section of this Report and Recommendation.

## Discussion and Analysis

Summary judgment is proper when the pleadings and evidence on file show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party for summary judgment has the burden of proving the lack of a genuine issue as to all the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Galindo v. Precision American Corp.,* 754 F.2d 1212, 1221-23 (5th Cir. 1985).

In deciding a motion for summary judgment, the Court must make a threshold inquiry in determining whether there is a need for a trial. "In other words, whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." 477 U.S. at 247-48. In making this threshold inquiry, the Court must consider that "[s]ummary judgment is proper when, viewed in the light most favorable to the non-moving party, the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Smith v. Xerox Corp.,* 866 F.2d 135, 137 (5th Cir. 1989) (citations omitted); Fed. R. Civ. P. 56(c).

Once the movants make a showing that there is no genuine material fact issue to support the nonmovant's case, the nonmovant cannot survive a motion for summary judgment by resting on the allegations in his pleadings. *Isquith v. Middle South Utilities, Inc.,* 847 F.2d 186, 199 (5th Cir.), *cert.*

4

*denied*, 488 U.S. 926 (1988); *see also Celotex*, 477 U.S. at 324. Rather, he must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the nonmovant must present evidence sufficient to support a resolution of the factual issues in his favor. *Anderson*, 477 U.S. at 257. Summary judgment is proper if the affidavits, depositions, answers, and admissions on file fail to establish the existence of an element essential to the plaintiff's case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23. The nonmovant must submit competent summary judgment evidence sufficient to defeat a properly supported motion for summary judgment. *See, e.g., Burleson v. Texas Dept. of Criminal Justice*, 393 F.3d 577, 589-90 (5th Cir. 2004); *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001); *Ragas v. Koch Gateway Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998).

Courts must employ summary judgment device cautiously. *Jackson v. Procunier*, 789 F.2d 307 (5th Cir. 1986). In prisoner *pro se* cases, courts must be careful to "guard against premature truncation of legitimate lawsuits merely because of unskilled presentations." *Murrell v. Bennett*, 615 F.2d 306, 311 (5th Cir. 1980).

The first defense raised by the Defendant concerns his lack of personal involvement in the Plaintiff's claims. He correctly noted that personal involvement is an essential element of a civil rights lawsuit. *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). Section 1983 does not give a cause of action based on the conduct of subordinates. *Id.* A supervisor may be held liable if either of the following exists: (1) his personal involvement in the constitutional deprivation, or (2) sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987). The Plaintiff has not shown that the Defendant had

5

any personal involvement in his strip search or property claims, thus the only way that he may be liable is through his own wrongful conduct as a supervisor which led to the violation of the Plaintiff's constitutional rights. In the original complaint, the Plaintiff stated that he was suing the Defendant for writing Administrative Directives. The Defendant may be liable for writing policies that violated the Plaintiff's rights.

The next defense raised by the Defendant is Eleventh Amendment immunity. The Eleventh Amendment provides that the State of Texas, as well as its agencies, are immune from liability. *Kentucky v. Graham*, 473 U.S. 159, 167 (1985). In *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989), the Supreme Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." The Supreme Court upheld the dismissal of the Michigan Department of State Police and its Director sued in his official capacity. *Id.* The Defendant cannot be liable to the extent that he has been sued in his official capacity for damages. The Court notes, however, that the Plaintiff is also seeking injunctive relief. The Fifth Circuit has held that officials of the State may be sued for relief that is declaratory or injunctive in nature and prospective in effect:

> "In *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Supreme Court carved out an exception to Eleventh Amendment immunity. The Court held that enforcement of an unconstitutional law is not an official act because a state can not confer authority on its officers to violate the Constitution or federal law. *See American Bank & Trust Co. of Opelousas v. Dent*, 982 F.2d 917, 920-21 (5th Cir. 1993). To meet the *Ex parte Young* exception, a plaintiff's suit alleging a violation of federal law must be brought against individual persons in their official capacities as agents of the state, and the relief sought must be declaratory or injunctive in nature and prospective in effect. *See Saltz v. Tennessee Dept't of Employment Sec.*, 976 F.2d 966, 968 (5th Cir. 1992).

*Aguilar v. Tx. Dep't Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998). *See also Mayfield v. Tx. Dept. of Criminal Justice*, 529 F.3d 599, 604-05 (5th Cir. 2008).

The Plaintiff argued that the Defendant's Eleventh Amendment immunity claims lack merit because the Court already found that he could proceed against the Defendant. He cited the Report and Recommendation. His argument is only partially correct. The Court found that he could not proceed with his claims against the Texas Board of Criminal Justice and the Texas Department of Criminal Justice. The Plaintiff was permitted to proceed with his claims against Executive Director Brad Livingston, but the Court did not distinguish between claims for damages against him in his official capacity as opposed to his individual capacity. Defendant Livingston correctly argued that the Plaintiff may not receive damages from him while suing him in his official capacity, but he can potentially receive damages against him for actions taken in his individual capacity.

The Defendant next argued that he is entitled to summary judgment based on the Plaintiff's strip search in the presence of female officers claim. He correctly noted that the Supreme Court has mandated a standard of review for "prison regulations claimed to inhibit the exercise of constitutional rights." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 344 (1987) (First Amendment); *Turner v. Safley*, 482 U.S. 78, 89 (1987) (mail and marriage regulations). He correctly noted that this Court must give great deference to prison administrator's judgment regarding security. *O'Lone*, 482 U.S. at 349; *Turner*, 482 U.S. at 89; *Elliott v. Lynn*, 38 F.3d 188, 191 (5th Cir. 1994). The regulation need only be "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. He argued that the Fifth Circuit has ruled that a male inmate being strip searched by a female officer when a male officer was unavailable does not violate the inmate's constitutional rights as it is a legitimate penological interest. *Oliver v. Scott*, 276 F.3d 736, 745 (5th Cir. 2002). The Court notes that this argument is essentially correct, but the Fifth Circuit actually found that the strip search policies were reasonably related to the legitimate penological objective of security. *Id.* at 747.

7

The Defendant noted that the Fifth Circuit has ruled that security concerns can justify the strip search of a male inmate in front of female guards and the law is well-established that strip searches carried out in non-secluded areas of the prison and in the presence of prison employees of the opposite sex are not unconstitutional. *Id.*; *Elliott v. Lynn*, 38 F.3d 188, 190-192 (5th Cir. 1994); *Letcher v. Turner*, 968 F.2d 508, 510 (5th Cir. 1992). He attached a copy of AD-03.22, TDCJ's Administrative Directive on Offender Searches. He asserted that the only claim that the Plaintiff can potentially maintain against him is a claim for prospective relief, alleging that he was responsible for drafting an unconstitutional policy and seeking to change that policy. He noted that AD-03.22 provides the following:

> Male offenders shall generally be searched by a male offender; however, in extraordinary circumstances and when approved by a supervisor, the search may be conducted by a female officer. If, under ordinary circumstances, a female officer is present in the vicinity of a male offender being strip searched, the female officer's duty is solely to provide security for the searching officer. The female officer shall not actively participate in the strip search.

The Defendant argued that the search policy conformed to the Fifth Circuit and Supreme Court's standards and, as such, cannot be unconstitutional. *See Bell v. Wolfish*, 441 U.S. 520, 558 (1979); *Oliver v. Scott*, 276 F.3d at 747; *Elliott v. Lynn*, 38 F.3d at 190-192; *Letcher v. Turner*, 968 F.2d at 510. He noted that Warden Dewberry testified at the *Spears* hearing that the strip searches that the Plaintiff's complained about are important in maintaining security.

The Defendant argued that the Plaintiff had failed to demonstrate how TDCJ's search policy, the policy that the Plaintiff contends was written by him, is unconstitutional. He argued that to the extent that the Plaintiff complains of individual instances of strip searches, he must bring those claims against the officers who conducted those searches. He argued that the Plaintiff's claims for injunctive relief must fail as a matter of law since the competent summary judgment evidence demonstrates that

8

TDCJ's search policy accords with the holdings of the Fifth Circuit and the Supreme Court. He further argued that the evidence before the Court demonstrates that the policy is reasonably related to legitimate penological interests.

In the previous Report and Recommendation (docket entry #37), the Court noted that the Plaintiff may have a possible meritorious claim about strip searches in light of the Fifth Circuit's recent case *Hutchins v. McDaniels, supra*. The motion for summary judgment did not address *Hutchins v. McDaniels*, thus the Defendant was ordered to file a supplemental motion for summary judgment addressing the case. The facts in *Hutchins v. McDaniels* reveal that a TDCJ male officer made an an inmate comply with a strip and cavity search in view of a number of prisoners and a female prison guard. 512 F.3d at 195. The plaintiff alleged that the officer had a "lewd smile" during the incident. *Id*. The district court dismissed the complaint for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915A. In reversing the decision, the Fifth Circuit stated the following:

> "A prisoner's rights are diminished by the needs and exigencies of the institution in which he is incarcerated. He thus loses those rights that are necessarily sacrificed to legitimate penological needs." *Moore*, 168 F.3d at 236-37. However, we have recognized that the Fourth Amendment protects prisoners from searches and seizures that go beyond legitimate penological interests. *See Id.* Searches of prisoners must be conducted in a manner that is reasonable under the facts and circumstances in which they are performed. *Id.* at 237. . . .
> In *Moore*, we reiterated that the Fourth and not the Eighth Amendment governs searches of prisoners, and recognized that a strip search by a prison guard can rise to the level of a Fourth Amendment violation. *Moore*, 168 F.3d at 237; *see also Elliott v. Lynn*, 38 F.3d 188, 191 n.3 (5th Cir. 1994). The strip and cavity search alleged by Hutchins, if proven true, could entitle him to relief under the Fourth Amendment. *See Moore*, 168 F.3d at 235-37 (recognizing that strip and cavity search of male prisoner, carried out in non-emergency situation by female guard, could give rise to Fourth Amendment violation).

512 F.3d at 196.

9

The Defendant argued in his supplemental motion for summary judgment that the Fifth Circuit in *Hutchins* merely found that the correct standard for addressing the plaintiff's cross-gender strip search claim is found in *Moore v. Carwell*, 168 F.3d 234 (5th Cir. 1999). The *Moore* case specifically held that a strip and cavity search of a male prisoner carried out in non-emergency situations by a female guard could give rise to a Fourth Amendment claim. *Moore*, 168 F.3d at 235-37. In a footnote, he noted that *Moore* only addresses searches that are conducted by female officers, while the Plaintiff only alleges that strip searches occurred in the presence of female officers. Because the Plaintiff only alleges that strip searches occurred in the presence of female officers, the Defendant argued that the controlling case law is found in *Oliver v. Scott*. The Defendant argued that *Hutchins* did not create new case law and that he was not seeking dismissal under § 1915A(b) or 42 U.S.C. § 19973(e). He then went on to cite *Oliver v. Scott* again for the proposition that security concerns can justify the strip search of a male inmate in the presence of a female guard. He acknowledged that even though *Oliver* does not address the specific claims of an inmate being strip searched in front of other inmates, it clearly holds to the principal that any minimal invasion of privacy is justified by the State's interest in promoting security. He attached an affidavit from Coffield Unit Assistant Warden Kevin Wheat for the proposition that safety and security concerns prevent an inmate from having complete privacy during a search, whether from female officers or other inmates. Warden Wheat further specified that TDCJ has put into place procedures to address an inmate's being harassed or assaulted by other inmates. He argued that the affidavit clearly shows that TDCJ's strip search policy is reasonable and promotes the State's interest in maintaining security.

The Defendant further asserted that to the extent that the Plaintiff is suing him in his official capacity, his relief is limited to injunctive relief pursuant to the Eleventh Amendment. To the extent

that the Plaintiff is suing him in his individual capacity, he may only be liable for implementing a policy that is itself a repudiation of constitutional rights and the moving force of the constitutional violation. *Grandstaff v. City of Borger*, 767 F.2d 161, 169 (5th Cir. 1985). The Defendant argued that TDCJ's strip search policy promotes the State's interest in prison security and does repudiate the Plaintiff's limited constitutional right to privacy. He stressed once again that the Fifth Circuit has addressed the policy on multiple occasions and has never found it unconstitutional. *See Oliver v. Scott*, 276 F.3d at 747; *Elliott v. Lynn*, 38 F.3d at 190-92; *Letcher v. Turner*, 968 F.2d at 510; *see also Tasby v. Lynaugh*, 123 Fed. Appx. 614 (5th Cir. 2005); *Jackson v. Dantzler*, No. 98-60667, slip op. (5th Cir. 1999).

The Plaintiff's response to the supplemental motion for summary judgment endeavored to point out flaws in the arguments presented by the Defendant. He asserted that the decision in *Hutchins v. McDaniels* addressed strip searches by correctional officers in general, as opposed to just cross gender strip searches. He is correct. *Hutchins v. McDaniels* concerned a strip and cavity search of a male inmate by a male officer. The Fifth Circuit held that the claim rose to a possible Fourth Amendment violation because of the circumstances in which the officer carried out the strip and cavity search while wearing a lewd smile in view of a number of prisoners and a female guard. 512 F.3d at 195. The decision cited *Moore*, but the facts of the case went beyond the facts in *Moore* where a male inmate was strip searched by a female officer. The Plaintiff asserted that his complaint concerns being strip searched in front of women and sexual predators in the inmate population in a non-emergency situation. He stressed that officers were authorized to conduct such searches by AD-03.22. He argued that the Defendant should be held liable because the officer was doing his job pursuant to policies written by the Defendant. He argued that he is entitled to nominal damages and punitive damages.

11

*Hutchins*, 512 F.3d at 198. He also argued that he is entitled to injunctive relief. In evaluating the claim, the Court notes that the Defendant may be liable to the extent that he is responsible for AD-03.22 and such policy violates the Plaintiff's constitutional rights. AD-03.22 provides the following:

> Male offenders shall generally be searched by a male offender; however, in extraordinary circumstances and when approved by a supervisor, the search may be conducted by a female officer. If, under ordinary circumstances, a female officer is present in the vicinity of a male offender being strip searched, the female officer's duty is solely to provide security for the searching officer. The female officer shall not actively participate in the strip search.

In *Oliver v. Scott*, the Fifth Circuit held that the strip search policy "narrowly cabins the scope of cross-sex strip searches and delegates the decision to the warden. Scott and Johnson cannot be held liable for [the warden's] actions, and Oliver cannot credibly allege that the policy delegating the decision violates a constitutional right." 276 F.3d at 743. Scott and Johnson were the Directors at the time the *Oliver* case was decided. The Fifth Circuit further held that "the policy allows for the possibility that a constitutional violation might occur, but it imposes no liability on the policymaker." *Id.* The Fifth Circuit finally held that the regulations were "reasonably related" to legitimate penological objectives. More recently, the Fifth Circuit reiterated "that strip searches carried out in nonsecluded areas of the prison and in the presence of prison employees of the opposite sex are not unconstitutional." *Tasby v. Lynaugh*, 123 Fed. Appx. 614 (5th Cir. 2005). The Fifth Circuit's decisions are clear that the policy is constitutional and this Court must follow the Fifth Circuit's precedent. The Defendant, as Director of the prison system, may not be liable for individual instances where the Plaintiff's constitutional rights may have been violated. *Hutchins v. McDaniels* and *Moore v. Carwell* are distinguishable from the present case because the two decisions dealt with individual circumstances where an officer may have violated an inmate's Fourth Amendment rights. In the present case, the Plaintiff has not complained about individual circumstances as seen in *Hutchins v. McDaniels* and *Moore v. Carwell*.

Instead, he focused on AD-03.22, but the Fifth Circuit clearly rejected claims challenging the policy itself. The Defendant is entitled to summary judgment with respect to the Plaintiff's strip search claim.

The next issue for consideration is the Plaintiff's claim that his property was taken without compensation. More specifically, he complained that his fan and two or three headphones were taken by prison personnel with the excuse that they had been altered. He asserted that the property was taken pursuant to prison policy. The Defendant was ordered to discuss the facts of this case in light of *Allen v. Thomas*, 388 F.3d 147, 149 (5th Cir. 2004). In his supplemental motion for summary judgment, the Defendant correctly noted that the Fifth Circuit reversed the trial court's dismissal because the court improperly applied the *Parratt/Hudson* doctrine. *See Hudson v. Palmer*, 468 U.S. 517 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981). In *Allen v. Thomas*, the Fifth Circuit noted that under the *Parratt/Taylor* doctrine, "a deprivation of a constitutionally protected property interest caused by a state employee's random, unauthorized conduct does not give rise to a § 1983 procedural due process claim, unless the State fails to provide an adequate postdeprivation remedy." 388 F.3d at 149 (citations omitted). The Fifth Circuit noted that the confiscation in that case was under the authority of a prison administrative directive, thus the issue for the court's consideration was whether the confiscation violated the plaintiff's procedural due process rights. *Id.*

The Defendant argued that the Plaintiff does not have a basis for a civil rights lawsuit because he has not pled that he was denied procedural due process in the confiscation of his admittedly broken property. He added that the Plaintiff, instead, claimed that the confiscation was an example of slavery while promoting his Thirteenth Amendment claim. The Defendant further noted that Warden Wheat specified in his affidavit that the confiscation concerns a legitimate penological interest of the State in confiscating altered property. Warden Wheat stated that inmates are not allowed to possess items that

13

are not in their original condition, whether they are altered on purpose or through normal use, because altered items may be turned into weapons and created other security concerns. The Defendant again argued that he is entitled to summary judgment on the property claim because the Plaintiff did not complain of the due process that he received in the confiscation of these items.

The Plaintiff's response did not address the issue raised in *Allen v. Thomas* concerning whether he was accorded procedural due process. Instead, he complained about the fact that his property was confiscated. He asserted that the policy was vague as to what could be confiscated, although he admitted that the policy included the word "altered." The Court also notes that the Defendant was correct in pointing out that the Plaintiff's property claim was brought in the context of "slave masters and slaves." *See* original complaint, page 22. Since the Plaintiff did not address the issue noted in *Allen v. Thomas* concerning the type of claim that may be raised, which is a denial of procedural due process, then the Defendant was correct in his argument that he is entitled to summary judgment on this claim.

The Court would add that the confiscation of property claim has elements similar to the strip search claim. The prison system has issued administrative directives on both issues. The Plaintiff has not shown that the policies violated his constitutional rights. The Director may not be liable in cases where the policy is constitutional but the application by individual officers may amount to a constitutional violation. With respect to the property claim, the prison system has promulgated policies. The Plaintiff has not shown that his procedural due process rights were violated with respect to the confiscation of the specific pieces of property. He likewise failed to sue anyone who personally allegedly violated his procedural due process rights. The dispositive issue, however, is that he has not shown that the Defendant personally violated his procedural due process rights nor shown that there

was a sufficient causal connection between the Defendant's wrongful conduct and a constitutional violation. *Thompkins v. Belt*, 828 F.2d at 303-304. The Defendant is entitled to summary judgment based on the Plaintiff's property claim.

The final issue raised by the Defendant is qualified immunity. The defense of qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established rights which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Wilson v. Layne*, 526 U.S. 603, 614 (1999). The doctrine of qualified immunity shields government officials "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Fraire v. Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992), *citing Anderson v. Creighton*, 483 U.S. 635, 638 (1987). The objective reasonableness of an official's conduct must be measured with reference to the law as it existed at the time of the conduct in question. *Anderson*, 483 U.S. at 639; *Jackson v. City of Beaumont Police Department*, 958 F.2d 616, 620 n. 5 (5th Cir. 1992) (citations omitted). *See King v. Chide*, 974 F.2d 653 (5th Cir. 1992) (discussing qualified immunity in the context of force used against an arrestee).

The Supreme Court mandated a two-step sequence for resolving government officials' qualified immunity claims in *Saucier v. Katz*, 533 U.S. 194 (2001). First of all, courts are required to resolve a "threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry." *Id.* at 201. Second, if the Plaintiff has satisfied the first step, the court must decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Id.* With respect to the second step, the Fifth Circuit has held that "a state actor is entitled to qualified immunity

if his or her conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

The Supreme Court recently revisited *Saucier v. Katz* in *Pearson v. Callahan*, 129 S.Ct. 808 (2009). The Court held that "experience supports our present determination that a mandatory, two-step rule for resolving all qualified immunity claims should not be retained." *Id.* at 817. The Court went on to hold that "while the sequence set forth in [*Saucier*] is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 818. The Supreme Court noted that the *Saucier* procedure sometimes unnecessarily "results in a substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case." *Id.* at 818. It was further noted that courts are free to follow the *Saucier* procedure, but the decision "simply recognizes that those courts should have the discretion to decide whether that procedure is worthwhile in particular cases." *Id.* at 821. The Supreme Court went on to discuss the facts of the case and found that the defendants were entitled to qualified immunity because the officers' conduct did not violate clearly established law." *Id.* at 822.

In the present case, the Plaintiff has not satisfied either step in the qualified immunity analysis. He has not shown that the Defendant violated his constitutional rights. He likewise failed to show that the Defendant's actions were objectively unreasonable in light of clearly established law. The Defendant is entitled to summary judgment from liability based on qualified immunity.

<u>Recommendation</u>

It is therefore recommended that Defendant Livingston's motion for summary judgment (docket entry numbers 61, 64 and 70) be granted and the case be dismissed with prejudice.

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations contained in the report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within ten days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United States Auto Ass'n.*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

**So ORDERED and SIGNED this 3rd day of April, 2009.**

*[signature: John D. Love]*

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE